**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ARC LINK LLC, | ) ) | Case No. 2:26-cv-00 |
| Plaintiff, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | |
| FORTINET INC., | ) ) | |
| Defendant. | ) ) ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Arc Link LLC ("Arc Link" or "Plaintiff") for its Complaint against Defendant

Fortinet Inc. ("Fortinet" or "Defendant") for patent infringement alleges as follows:

**THE PARTIES**

1.      Arc Link is a limited liability company organized and existing under the laws of

the State of Texas, with its principal place of business located at 209 East Austin Street, Marshall,

TX 75670.

2.      On information and belief, Defendant Fortinet Inc. is a corporation organized under

the laws of the state of Delaware, with a regular and established place of business in this Judicial

District at 6735 Salt Cedar Way, Frisco, TX 75034. On information and belief, Fortinet does

business in Texas and in the Eastern District of Texas, directly or through intermediaries.

**JURISDICTION**

3.      This is an action for patent infringement arising under the patent laws of the United

States, 35 U.S.C. §§ 1, *et seq*.  This Court has jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331 and 1338(a).

4.      This Court has specific and personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute.  Upon information and belief, Defendant has sufficient minimum contacts with the forum because Defendant transacts substantial business in the State of Texas and in this Judicial District.  Further, Defendant has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, alleged more particularly below.

5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1400(b) and 1391(b) and (c) because Defendant is subject to personal jurisdiction in this Judicial District, has committed acts of patent infringement in this Judicial District, and has a regular and established place of business in this Judicial District. Defendant, through its own acts, makes, uses, sells, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District such that this venue is a fair and reasonable one.

## PATENT-IN-SUIT

6.      On May 17, 2022, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,336,622 (the "'622 Patent") entitled "Apparatus and Method for Deploying Firewall on SDN and Network Using the Same." A true and correct copy of the '622 Patent is attached hereto as Exhibit A.

7.      On January 17, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,549,328 (the "'328 Patent") entitled "Method to Optimize the Communication Parameters Between an Access Point and at Least One Client Device." A true and correct copy of the '328 Patent is attached hereto as Exhibit B.

8.      On January 24, 2023, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,563,655 (the "'655 Patent") entitled "Network Monitoring Apparatus and Method Thereof in Programmable Network Virtualization." A true and correct copy of the '655 Patent is attached hereto as Exhibit C.

9.      On June 12, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,200,592 (the "'592 Patent") entitled "System and Method for Modeling Multilabel Classification and Ranking." A true and correct copy of the '592 Patent is attached hereto as Exhibit D.

10.     On January 24, 2017, the United States Patent and Trademark office duly and legally issued U.S. Patent No. 9,552,548 (the "'548 Patent") entitled "Using Classified Text and Deep Learning Algorithms to Identify Risk and Provide Early Warning." A true and correct copy of the '592 Patent is attached hereto as Exhibit E.

11.     Arc Link is the sole and exclusive owner of all right, title, and interest in the '622 Patent, the '328 Patent, the '655 Patent, the '592 Patent, and the '548 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents") and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Arc Link also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

12.     Arc Link has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit. On information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

### FACTUAL ALLEGATIONS

13.     The '328 Patent generally relates to a system and method to optimize the

3

communication on a channel between an access point and at least one client device. The technology described in the '328 Patent was developed by inventors Julien Herzen, Ruben Merz, and Patrick Thiran. By way of example, this technology is implemented in hardware and/or software products that coordinate host or endpoint security information with a network firewall or SDN-style enforcement point to automatically deploy firewall rules or blocking actions.

14.    The '655 Patent generally relates to a system and method implemented with a network hypervisor, or equivalent thereof, to implement software defined network (SDN)-based network virtualization. The technology described in the '655 Patent was developed by inventors Gyeongsik Yang, Minkoo Kang, and Hyuck Yoo. By way of example, this technology is implemented in hardware and/or software products that virtualize shared physical network resources into separately managed virtual networks and provide isolated flow, port, and physical-resource consumption statistics for each virtual network.

15.    The '592 Patent generally relates to a system and method for determining and utilizing detection models, such as models for machine condition monitoring. The technology described in the '592 Patent was developed by inventors Klaus Brinker and Claus Neubauer. By way of example, this technology is implemented in hardware and/or software products that use machine-learning models to monitor condition data from multiple networked devices or sensors, classify or rank detected conditions, separate relevant fault/anomaly conditions from non-relevant conditions, and output an evaluated machine condition or alert.

16.    The '548 Patent generally relates to methods for using deep learning to identify specific, potential risks. The technology described in the '548 Patent was developed by inventor Nelson E. Brestoff. By way of example, this technology is implemented in hardware and/or software products that use trained AI, machine-learning, deep-learning, and/or LLM-based text

classifiers to analyze internal electronic communications or enterprise content, identify risks or threats, and output early-warning reports, incidents, alerts, scores, or case-management events.

17.     The '622 Patent generally relates to API-level intrusion detection for monitoring and analyzing API calls to detect malicious or unauthorized activity. The technology described in the '622 Patent was developed by inventors Hyuk Lim, Sung Hwan Kim, Jargalsaikhan Narantuya, and Seung Hyun Yoon. By way of example, this technology is implemented in hardware and/or software products that provide a firewall on a software-defined network.

18.     Fortinet has infringed and continues to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products that infringe the Patents-in-Suit.

## COUNT I
### (Infringement of the '328 Patent)

19.     Paragraphs 1 through 18 are incorporated by reference as if fully set forth herein.

20.     Arc Link has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '328 Patent.

21.     Defendant has and continues to directly infringe the '328 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '328 Patent. Such products include, but are not limited to hardware and/or software products that optimize wireless access-point communications by monitoring channel interference and dynamically selecting or switching channel frequency and/or bandwidth for connected client devices, such as FortiAP (e.g., FAP-23JK, FAP-231K, FAP-241K, FAP-243K, FAP-441K, FAP-443K, FAP-222KL, FAP-244K, FAP-234G, FAP-432G, FAP-831F, FAP-432FR, FAP-23JF), FortiWifi (e.g., FWF-30G, FWF-40F, FWF-50G, FWF-60F,

FWF-70G, FWF-80F-2R. FWF-51E, FWF-50G-SFP, FWF-50G-DSL, FWF-50G-5G-II, FWF-61F, FWF-71G, FWF-70G-POE, FWF-81F-2R), and FortiGate (FG/FWF-30G, FG/FWF-40F, FG/FWF-50G, FG/FWF-60F, FG-120G, FG-200G, FG-400G, FG-700G, FG-900G), FortiGate/FortiWiFi (30 & 40 Series, 60 & 70 Series, 80 & 90 Series, FortiGate 100 Series, 200 Series, 400 Series, 600 to 900 Series, 1000 to 3000 Series, FG-4000 Series, FG-VM Series), in operation with FortiAIOps and FortiOS for network management and/or other hardware/software, among other Fortinet products.

22. For example, Defendant has and continues to directly infringe at least claim 1 of the '328 Patent by making, using, offering to sell, selling, and/or importing into the United States hardware and/or software products that control communication channels between access points, such as the FortiAP 441K, in operation with other Fortinet hardware and/or software accused herein. The FortiAP 441K is exemplary of how the other Fortinet products accused herein infringe the '328 Patent.

23. For example, the FortiAP 441K performs a method to optimize communications on a channel between an access point and a plurality of client devices, said channel being characterized by a center frequency and a bandwidth, said method comprising: establishing by the access point (e.g., FortiAP) a connection with the client devices (e.g., Wi-Fi stations and/or an endpoint) on a first channel (e.g., FortiAP radio channel) having a first center frequency and a first bandwidth (e.g., selected 2.4 GHz / 5 GHz / 6 GHz channel).



24.    The FortiAP 441K performs the step of exchanging by the access point data through the first channel with the client devices (e.g., FortiAP wireless radio, RF front end, and/or network interface).

---

[1] https://docs.fortinet.com/document/fortiap/7.6.5/fortiwifi-and-fortiap-configuration-guide/621215/wireless-network-configuration.
[2] https://docs.fortinet.com/document/fortiap/8.0.0/fortiwifi-and-fortiap-configuration-guide/252439/configuring-the-fortigate-interface-to-manage-fortiap-units.



25.    The FortiAP 441K performs the step of monitoring by the access point a first interference level on the first channel (FortiAP radio scanning and/or RF monitoring, with DARRP and/or Radio Resource Provisioning).



26.    The FortiAP 441K performs the step of reviewing compatibility levels to the access point from the client devices (e.g., client capability information from Wi-Fi clients), a

---

[3] https://docs.fortinet.com/document/fortiap/7.6.5/fortiwifi-and-fortiap-configuration-guide/621215/wireless-network-configuration.

[4] https://docs.fortinet.com/document/fortiap/7.6.5/fortiwifi-and-fortiap-configuration-guide/148466/understanding-distributed-radio-resource-provisioning.

compatibility level for a client device defining whether the client device is able to dynamically switch from the first channel to another second channel having a different center frequency (e.g., whether the client can operate on the target band/channel) and if the client device will change channels in response to an instruction from the access point (e.g., client response to AP/wireless-controller steering).

Home > FortiAP / FortiWiFi 7.6.5 > FortiWiFi and FortiAP Configuration Guide

**Frequency handoff or band-steering**

Encouraging clients to use the 5 GHz WiFi band if possible enables those clients to benefit from faster interference-free 5GHz communication. The remaining 2.4 GHz clients benefit from reduced interference.

The WiFi controller probes clients to determine their WiFi band capability. It also records the RSSI (signal strength) for each client on each band.

If a new client attempts to join the network, the controller looks up that client's MAC address in its wireless device table and determines if it is a dual band device. If it is not a dual band device, then it is allowed to join. If it is a dual band device, then its RSSI on 5 GHz is used to determine whether the device is close enough to an access point to benefit from movement to 5 GHz frequency.

If both conditions of 1) dual band device and 2) RSSI value is strong, then the wireless controller does not reply to the join request of the client. This forces the client to retry a few more times and then timeout and attempt to join the same SSID on 5 GHz. Once the Controller see this new request on 5 GHz, the RSSI is again measured and the client is allowed to join. If the RSSI is below threshold, then the device table is updated and the controller forces the client to timeout again. A client's second attempt to connect on 2.4 GHz will be accepted. [5]

27.    The FortiAP 441K performs the step of instructing the client devices to switch to a second channel having a different center frequency and/or a different bandwidth (e.g., FortiAP and/or FortiGate Wireless Controller channel-change or steering instruction, such as DARRP/ACS selecting another channel or frequency handoff/band steering) only if all compatibility levels for all client devices indicate that all client devices are able to dynamically switch from the first channel to the second channel.

---

[5] https://docs.fortinet.com/document/fortiap/7.6.5/fortiwifi-and-fortiap-configuration-guide/538473/wireless-client-load-balancing-for-high-density-deployments.



28.     The FortiAP 441K performs the step of determining by the access point a second interference level on the second channel (e.g., FortiAP RF scan, DARRP, and/or ACS measurement).



29.     The FortiAP 441K performs the step of comparing by the access point the first

6 https://docs.fortinet.com/document/fortiap/7.6.5/fortiwifi-and-fortiap-configuration-guide/538473/wireless-client-load-balancing-for-high-density-deployments.
7 https://docs.fortinet.com/document/fortiap/7.6.5/fortiwifi-and-fortiap-configuration-guide/148466/understanding-distributed-radio-resource-provisioning.

10

interference level with the second interference level (e.g., DARRP / ACS channel-selection logic).



30.    The FortiAP 441K performs the step of deciding by the access point whether to switch back to the first channel based on the comparison (e.g., FortiAP and/or DARRP periodic re-evaluation and channel optimization).



31.    Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Fortinet has used the Accused Products in a manner that directly infringes at least the method claims of the '328 Patent.

32.    Defendant has and continues to indirectly infringe one or more claims of the '328 Patent by knowingly and intentionally inducing others, including Fortinet customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using,

---

[8] https://docs.fortinet.com/document/fortigate/7.6.0/new-features/280317/enhance-darrp-with-fortiaiops-7-6-5.

[9] https://docs.fortinet.com/document/fortigate/7.6.0/new-features/280317/enhance-darrp-with-fortiaiops-7-6-5.

offering to sell, selling and/or importing into the United States products that include infringing technology.

33.    Defendant, with knowledge that these products, or the use thereof, infringe the '328 Patent at least as of the date of this Complaint, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '328 Patent by providing these products to others for use in an infringing manner.  Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, including specifically those related to Defendant's specific industry, thereby remaining willfully blind to the Patents-in-Suit at least as early as the issuance of the Patents-in-Suit.

34.    Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '328 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications, including the documents cited herein.

35.    Defendant has indirectly infringed and continue to indirectly infringe one or more claims of the '328 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such

12

that the '328 Patent is directly infringed by others.  The accused components within the Accused Products are material to the invention of the '328 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be specially made or adapted for use in the infringement of the '328 Patent. Defendant performs these affirmative acts with knowledge of the '328 Patent and with intent, or willful blindness, that they cause the direct infringement of the '328 Patent.

36.    Arc Link has suffered damages as a result of Defendant's direct and indirect infringement of the '328 Patent in an amount to be proven at trial.

37.    Arc Link has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '328 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

### COUNT II
**(Infringement of the '655 Patent)**

38.    Paragraphs 1 through 18 are incorporated by reference as if fully set forth herein.

39.    Arc Link has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '655 Patent.

40.    Defendant has and continues to directly infringe the '655 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '655 Patent. Such products include, but are not limited to, hardware and/or software products that virtualize shared physical network resources into separately managed virtual networks and provide isolated flow, port, and physical-resource consumption statistics for each virtual network, such as FortiGate next-generation firewall appliances, including FortiGate 90G/91G, FortiGate 120G/121G, FortiGate 200G/201G, FortiGate

13

3200F/3201F, FortiGate 700G/701G, FortiGate 900G/901G, FortiGate 400G/401G, and FortiGate 3500G, when configured with FortiOS multi-VDOM/VDOM functionality and FortiView/interface-statistics monitoring, alone or in operation with Fortinet management, analytics, reporting, and/or network-operation software and other Fortinet hardware/software, among other Fortinet products.

41.    For example, Defendant has and continues to directly infringe at least claim 1 of the '328 Patent by making, using, offering to sell, selling, and/or importing into the United States hardware and/or software products that control communication channels between access points, such as the FortiGate 91G Series appliance, in operation with other Fortinet hardware and/or software accused herein, such as FortiOS. The FortiGate 91G Series appliance is exemplary of how the other Fortinet products accused herein infringe the '655 Patent.

42.    For example, the FortiGate 91G Series appliance comprises a computing apparatus implemented with a network hypervisor implementing software defined network (SDN)-based network virtualization, the computing apparatus comprising: a statistics virtualization module (e.g., VDOM monitoring/statistics subsystem) configured to receive a request for individual physical resource consumption statistics for a first virtual network (e.g., per-VDOM monitoring via FortiManager and/or FortiMonitor) of multiple separately managed virtual networks; determine whether the at least one physical resource is shared between the first virtual network and at least one other of the multiple separately managed virtual networks (e.g., shared CPU/interface/session/resource allocation across multiple VDOMs tenants), and isolatedly provide individual physical resource consumption statistics (e.g., per-VDOM dashboards, tenant-isolated statistics) to the first virtual network based on the determination whether the at least one physical resource is shared. For example, the FortiGate 91G Series appliance comprises a statistics

14

virtualization module, wherein the statistics virtualization module provides respective virtual flow entry statistics (e.g., session tables, policy hit counters, and/or NetFlow-like telemetry) to the first virtual network, including: provision of virtual flow entry statistics for the first virtual network, provision of virtual port statistics (e.g., virtual interface statistics per VDOM/interface) based on the at least one physical resource for the first virtual network (e.g., shared NIC/CPU/memory resources underneath VDOMs).

### Multi-VDOM mode

In multi-VDOM mode, the FortiGate can have multiple VDOMs that function as independent units. When multi-VDOM mode is first enabled, all VDOM configurations will move to the root VDOM by default. The root VDOM cannot be deleted, and remains in the configuration even if it is not processing any traffic. New VDOMs can be created, up to the VDOM limit allowable on your device. [10]

### Using APIs

Administrators can use API calls to a FortiGate to:

- Retrieve, create, update, and delete configuration settings
- Retrieve system logs and statistics
- Perform basic administrative actions, such as a reboot or shut down through programming scripts. [11]

---

[10] https://docs.fortinet.com/document/%20fortigate/7.6.5/administration-guide/597696/vdom-overview#MultiVDOMmode.

[11] https://docs.fortinet.com/document/fortigate/8.0.0/administration-guide/940602/using-apis.



## Global and per-VDOM resources

Global and per-VDOM resources can be configured when the FortiGate is in multi-VDOM mode. Global resources apply to resources that are shared by the whole FortiGate, while per-VDOM resources are specific to each VDOM.

By default, all per-VDOM resource settings are set to have no limits. This means that any single VDOM can use all of the FortiGate device's resources. This could deprive other VDOMs of the resources that they require, to the point that could be unable to function. We recommend setting maximum values on the resources that are vital to you.

## Interface settings

Administrators can configure both physical and virtual FortiGate interfaces in *Network > Interfaces*. There are different options for configuring interfaces when FortiGate is in NAT mode or transparent mode.

The available options will vary depending on feature visibility, licensing, device model, and other factors. The following list is not comprehensive.

---

[12] https://docs.fortinet.com/document/fortigate/8.0.0/administration-guide/863511/fortiview-sessions.

[13] https://docs.fortinet.com/document/fortigate/8.0.0/administration-guide/597696/vdom-overview#GlobalAndPerVDOM.

[14] https://docs.fortinet.com/document/fortigate/8.0.0/administration-guide/574723/interface-settings.

```
Displaying detail Hardware NIC information

Monitoring the hardware NIC is important because interface errors indicate data link or physical layer issues which may impact the performance of the FortiGate.

To monitor hardware network operations in the CLI:

  diagnose hardware deviceinfo nic <interface>

or

  diagnose netlink interface list <interface>

Sample output:

The following is sample output when the <interface> is set to port1:

# diagnose netlink interface list port1

if=port1 family=00 type=1 index=3 mtu=1500 link=0 master=0
flags=up broadcast run multicast
Qdisc=mq hw_addr=00:0c:29:fc:18:54 broadcast_addr=ff:ff:ff:ff:ff:ff
stat: rxp=61149 txp=81109 rxb=5839308 txb=52396373 rxe=0 txe=0 rxd=0 txd=0 mc=95 collision=0 @ time=1678486883
re: rxl=0 rxo=0 rxc=0 rxf=0 rxfi=0 rxm=0
te: txa=0 txc=0 txfi=0 txh=0 txw=0
misc rxc=0 txc=0
```

| 1125884 | Adds support for displaying Forward Error Correction (FEC) status, RX/TX bits per second (bps), packets per second (pps), and host-level RX drop statistics in NIC interface diagnostics, providing enhanced visibility to assist with debugging and performance analysis. |

43.     Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Fortinet has used the Accused Products in a manner that directly infringes at least the method claims of the '655 Patent.

44.     Defendant has and continues to indirectly infringe one or more claims of the '655 Patent by knowingly and intentionally inducing others, including Fortinet customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

45.     Defendant, with knowledge that these products, or the use thereof, infringe the '655 Patent at least as of the date of this Complaint, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '655 Patent by providing these products to others for use in an infringing manner.  Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, including

---

[15] https://docs.fortinet.com/document/fortigate/8.0.0/administration-guide/306050/displaying-detail-hardware-nic-information.

[16] https://docs.fortinet.com/document/fortigate/8.0.0/fortios-release-notes/743723/new-features-or-enhancements.

specifically those related to Defendant's specific industry, thereby remaining willfully blind to the Patents-in-Suit at least as early as the issuance of the Patents-in-Suit.

46.     Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '655 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications, including the documents cited herein.

47.     Defendant has indirectly infringed and continue to indirectly infringe one or more claims of the '655 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '655 Patent is directly infringed by others.  The accused components within the Accused Products are material to the invention of the '655 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be specially made or adapted for use in the infringement of the '655 Patent. Defendant performs these affirmative acts with knowledge of the '655 Patent and with intent, or willful blindness, that they cause the direct infringement of the '655 Patent.

48.     Arc Link has suffered damages as a result of Defendant's direct and indirect

infringement of the '655 Patent in an amount to be proven at trial.

49.     Arc Link has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '655 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT III
### (Infringement of the '592 Patent)

50.     Paragraphs 1 through 18 are incorporated by reference as if fully set forth herein.

51.     Arc Link has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '592 Patent.

52.     Defendant has and continues to directly infringe the '592 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '592 Patent. Such products include, but are not limited to, hardware and/or software products that use machine-learning models to monitor condition data from multiple networked devices or sensors, classify or rank detected conditions, separate relevant fault/anomaly conditions from non-relevant conditions, and output an evaluated machine condition or alert, such as FortiAIOps (e.g., FortiAIOps VM, FortiAIOps 100G / FAO-100G, FortiAIOps 500G / FAO-500G, FortiAIOps 2000G / FAO-2000G); FortiGate/FortiWiFi (e.g., FG/FWF-30G, FG/FWF-31G, FG/FWF-40F, FG/FWF-50G, FG/FWF-51G, FG/FWF-50G-5G, FG/FWF-51G-5G, FG/FWF-50G-SFP, FG/FWF-50G-DSL, FG/FWF-50G-SFP-POE, FG/FWF-51G-SFP-POE, FG/FWF-60F, FG/FWF-61F, FG/FWF-70F, FG/FWF-71F, FG/FWF-70G, FG/FWF-71G, FG/FWF-70G-POE, FG/FWF-71G-POE, FG/FWF-80F, FG/FWF-81F, FG/FWF-80F-POE, FG/FWF-81F-POE, FG/FWF-90G, FG/FWF-91G, FG-100F, FG-101F, FG-120G, FG-121G, FG-200F, FG-201F, FG-200G, FG-201G, FG-400F, FG-401F, FG-700G, FG-

701G, FG-900G, FG-901G, FG-1000F, FG-1001F, FG-1800F, FG-1801F, FG-2600F, FG-2601F, FG-3000F, FG-3001F, FG-3200F, FG-3201F, FG-3500F, FG-3501F, FG-4200F, FG-4201F, FG-4400F, FG-4401F, FG-4800F, FG-4801F, FG-6000F, FG-7000F, FortiGate-VM, and FortiGate cloud variants); FortiAP (e.g., FAP-23JF, FAP-231F, FAP-234F, FAP-431F, FAP-432F, FAP-432FR, FAP-433F, FAP-831F, FAP-231G, FAP-233G, FAP-234G, FAP-431G, FAP-432G, FAP-433G, FAP-221K, FAP-222KL, FAP-23JK, FAP-231K, FAP-241K, FAP-243K, FAP-441K, and FAP-443K); FortiSwitch (e.g., FS-108F, FS-108F-POE, FS-108F-FPOE, FS-110G-FPOE, FS-124F, FS-124F-POE, FS-124F-FPOE, FS-124G, FS-124G-FPOE, FS-148F, FS-148F-POE, FS-148F-FPOE, FS-624F, FS-624F-FPOE, FS-648F, FS-648F-FPOE, FS-1048G, FS-T1024F-FPOE, FS-2048F, FS-3032G, FSR-108F, FSR-112F-POE, FSR-216F-POE, and FSR-424F-POE); FortiExtender (e.g., FEX-101F, FEX-200F, FEX-201F, FEX-202F, FEX-212F, FEX-311F, FEX-511F, FEX-101G, FEX-211G, FEX-511G, FEX-511G-WiFi, FER-511G, FEV-211F, FEV-211F-AM, FEV-212F, FEV-212F-AM, FEV-511G, FBS-10F-WiFi, FBS-20G, and FBS-20G-WiFi); FortiAnalyzer (e.g., FAZ-150G, FAZ-300G, FAZ-800G, FAZ-810G, FAZ-1000F, FAZ-1000G, FAZ-3000F, FAZ-3000G, FAZ-3100G, FAZ-3500F, FAZ-3500G, FAZ-3510G, FAZ-3700F, FAZ-3700G, FortiAnalyzer-VM64, FortiAnalyzer-VM64-AWS, FortiAnalyzer-VM64-Azure, FortiAnalyzer-VM64-GCP, FortiAnalyzer-VM64-HV, FortiAnalyzer-VM64-KVM, FortiAnalyzer-VM64-Xen, FortiAnalyzer-VM64-IBM, FortiAnalyzer-VM64-OPC, and FortiAnalyzer-K8S-CLOUD); among other Fortinet products.

53.     For example, Defendant has and continues to directly infringe at least claim 20 of the '592 Patent by making, using, offering to sell, selling, and/or importing into the United States hardware and/or software products that use machine-learning models to monitor condition data from multiple networked devices or sensors, classify or rank detected conditions, separate relevant

20

fault/anomaly conditions from non-relevant conditions, and output an evaluated machine condition or alert, such as the FortiGate 91G Series appliance, in operation with other Fortinet hardware and/or software accused herein, such as FortiOP, FortiAIOps, and FortiOS. The FortiGate 91G Series appliance is exemplary of how the other Fortinet products accused herein infringe the '592 Patent.

54.    For example, the FortiGate 91G Series performs a method of machine condition monitoring comprising: monitoring a plurality of sensors (e.g., device telemetry, logs, interface counters, SD-WAN SLA health checks, switch-port/link metrics, wireless/RF metrics, client-experience metrics) adapted to detect machine condition information. (e.g., latency, jitter, packet loss, throughput, uptime, device health, RF health, link status, SLA pass/fail, client connection quality, configuration issues).

## Overview

FortiAIOps enables you to proactively monitor the health of your entire wireless, wired, and SD-WAN network, and provides insights into key health statistics, based on the Artificial Intelligence (AI) and Machine Learning (ML) architecture that it is built upon. FortiAIOps ingests data for analysis and automated event correlation to precisely detect anomalies that impact the clients' network experience. It learns from numerous sources such as FortiGates, FortiAPs, FortiSwitches, and FortiExtenders to report statistics on a series of comprehensive and simple dashboards, providing visibility and deep insight into your network. This predictable network infrastructure enables you to swiftly identify the root cause with the highest probability of association to actual issues, and its resolution. [17]

### Hardware requirements

The following are the recommended resource requirements for FortiAIOps on VM platforms.

| Maximum device count | Recommended Hardware | Supported Mode |
|---|---|---|
| • FortiGates - 30 <br> • FortiSwitches - 90 <br> • FortiExtenders - 30 <br> • FortiAPs - 180 <br> • Clients - 3000 | • CPU - 8 <br> • Memory - 32 GB <br> • Storage - 1 TB | Monitoring and AI Insights |

[18]

---

[17] https://docs.fortinet.com/document/fortiaiops/3.4.0/user-guide/133572/overview.
[18] https://docs.fortinet.com/document/fortiaiops/3.4.0/release-notes/903200/supported-hardware-and-software.

55.     The FortiGate 91G Series performs the step of evaluating the machine condition information (e.g., FortiAIOps AI/ML engine) by employing a calibrated label ranking model (e.g., FortiAIOps AI/ML anomaly, baseline, classification and/or logic) predicting a zero-point label (e.g., threshold/baseline boundary separating actionable/relevant anomalies from normal/non-relevant conditions) between a first subset of labels (e.g., relevant/actionable issue labels) and a second subset of labels (e.g., normal/non-actionable labels), wherein the zero-point label represents a split point between the first subset of labels and the second subset of labels.

## Overview

FortiAIOps enables you to proactively monitor the health of your entire wireless, wired, and SD-WAN network, and provides insights into key health statistics, based on the Artificial Intelligence (AI) and Machine Learning (ML) architecture that it is built upon. FortiAIOps ingests data for analysis and automated event correlation to precisely detect anomalies that impact the clients' network experience. It learns from numerous sources such as FortiGates, FortiAPs, FortiSwitches, and FortiExtenders to report statistics on a series of comprehensive and simple dashboards, providing visibility and deep insight into your network. This predictable network infrastructure enables you to swiftly identify the root cause with the highest probability of association to actual issues, and its resolution.

FortiAIOps is based upon a deployment-specific and adaptive learning AI/ML model, that automatically adjusts whenever there are changes in the Radio Frequency (RF) environment. This is an enhancement from the static AI/ML model of the previous releases. The system runs a weekly (on each Saturday) analysis, to detect any RF changes based on the past week's collected data, and assess if accuracy improvements are possible. If improvements are identified, the AI/ML model is updated to better align with your RF environment. All AI/ML model changes are notified via a local log event message.

FortiAIOps monitors integrated wireless, wired, and SD-WAN networks by supporting the monitoring of FortiGate controllers. You can monitor and manage FortiGate controllers concurrently associated with FortiAPs and stations in a large deployments. The centralized real-time data and event logs offered by FortiAIOps, aim at diagnosing and troubleshooting network issues by analyzing potential problems and suggesting remedial steps.

FortiAIOps calculates the SLA thresholds/baselines *dynamically* using the AI-ML architecture, to enable you to diagnose network issues based on accurate and latest data trends. The algorithms identify the values for each environment by clustering clients based on the connection quality using specific parameters. The thresholds are then derived based on the calculated average of the client connection data, to report variations in your network. These AI driven algorithms are designed to learn new data regularly for changes in client activity, calculate thresholds, and report statistics. You can also provide *static* threshold values for some SLAs, to report network issues. You can view the impacted SLA data in the dashboards.[19]

---

[19] https://docs.fortinet.com/document/fortiaiops/3.4.0/user-guide/133572/overview.



56.    The FortiGate 91G Series performs the step of outputting an evaluated machine condition (e.g., FortiAIOps anomaly, insight, health status, root cause, and recommended remediation) from the calibrated label ranking model based on the machine condition information.

---

[20] https://docs.fortinet.com/document/fortiaiops/3.4.0/user-guide/961737/forecast.



57.     Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Fortinet has used the Accused Products in a manner that directly infringes at least the method claims of the '592 Patent.

58.     Defendant has and continues to indirectly infringe one or more claims of the '592 Patent by knowingly and intentionally inducing others, including Fortinet customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

59.     Defendant, with knowledge that these products, or the use thereof, infringe the '592 Patent at least as of the date of this Complaint, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '592 Patent by providing these products to others for use in an infringing manner. Alternatively, on information

---

[21] https://docs.fortinet.com/document/fortiaiops/3.4.0/user-guide/386979/network-assurance-dashboard.

and belief, Defendant has adopted a policy of not reviewing the patents of others, including specifically those related to Defendant's specific industry, thereby remaining willfully blind to the Patents-in-Suit at least as early as the issuance of the Patents-in-Suit.

60.    Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '592 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications, including the documents cited herein.

61.    Defendant has indirectly infringed and continue to indirectly infringe one or more claims of the '592 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '592 Patent is directly infringed by others.  The accused components within the Accused Products are material to the invention of the '592 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be specially made or adapted for use in the infringement of the '592 Patent. Defendant performs these affirmative acts with knowledge of the '592 Patent and with intent, or willful blindness, that they cause the direct infringement of the '592 Patent.

62.    Arc Link has suffered damages as a result of Defendant's direct and indirect infringement of the '592 Patent in an amount to be proven at trial.

63.    Arc Link has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '592 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

<u>COUNT IV</u>
**(Infringement of the '548 Patent)**

64.    Paragraphs 1 through 18 are incorporated by reference as if fully set forth herein.

65.    Arc Link has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '548 Patent.

66.    Defendant has and continues to directly infringe the '548 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '548 Patent. Such products include, but are not limited to, hardware and/or software products that use trained AI, machine-learning, deep-learning, and/or LLM-based text classifiers to analyze internal electronic communications or enterprise content, identify risks or threats, and output early-warning reports, incidents, alerts, scores, or case-management events, including, but not limited to, FortiDLP (e.g., FortiDLP cloud service, FortiDLP Console, FortiDLP Agent, FortiDLP API, Event Streaming Service, webhooks, incident notifications, labels, policies, risk scores, insider-risk management, SaaS data security, GenAI data protection, and SIEM integrations); FortiMail / FortiMail Workspace Security (e.g., FortiMail 8.0, FortiMail 7.6.x, FortiMail VM, FortiMail Cloud, FortiMail Workspace Security, FortiMail 200F, FortiMail 400F, FortiMail 900F, FortiMail 900G, FortiMail 2000F, FortiMail 3000F, FortiMail 3200E, antispam profiles, BEC/impersonation analysis, ML/LLM-based email threat detection,

26

quarantine, outbreak protection, Bayesian training, and email reporting); among other Fortinet products.

67.    For example, Defendant has and continues to directly infringe at least claim 17 of the '548 Patent by making, using, offering to sell, selling, and/or importing into the United States hardware and/or software products that use trained AI, machine-learning, deep-learning, and/or LLM-based text classifiers to analyze internal electronic communications or enterprise content, identify risks or threats, and output early-warning reports, incidents, alerts, scores, or case-management events, such as FortiDLP, in operation with other Fortinet hardware and/or software accused herein, such as FortiAnalyzer, FortiSIEM, FortiSOAR, FortiAI, and FortiOS. FortiDLP is exemplary of how the other Fortinet products accused herein infringe the '548 Patent.

68.    For example, FortiDLP performs a method of using classified text and deep learning algorithms to identify risk and provide early warning comprising: creating one or more training datasets for textual data (e.g., FortiGuard threat corpora, email datasets, and/or SOC telemetry datasets) corresponding to one or more risk classifications (e.g., malware, phishing, insider threat, BEC, data exfiltration categories), wherein said risk classification comprises one or more threats or risks of interest. For example, FortiDLP uses labels, policies, content inspection, entity/user context, detections, risk scoring, incident sequence rules, SIEM events, webhooks, and incident notifications to classify data-security and insider-risk events.

## Policies

Policies automate threat detection and response. They enable you to define rules for specific user activities and the actions that are taken if these rules are breached.

Policies can be customized to align with your IT policies and security needs. You can use policies for educational purposes—for example, to display an on-screen message to a user upon connecting to an unsecured public Wi-Fi network, informing them that they are violating the corporate policy. Or, you can enforce stricter policies to prevent data loss, such as locking a computer if a user attempts to upload a sensitive file to a file sharing site. You can also use policies to highlight activities as detections in the FortiDLP Console. For example, you could be alerted to a user updating their profile and career interests on LinkedIn and visiting recruitment websites, so you could monitor their file activity and protect against data theft until they depart your organization.

## Content inspection parameters

An array of FortiDLP's policy templates have content inspection capabilities, automating the detection of sensitive data and the execution of actions to protect it.

Content inspection allows the FortiDLP Agent to monitor user activities to identify and control how data—such as Personally Identifiable Information (PII), Payment Card Industry (PCI) data, and Protected Health Information (PHI)—is being accessed and used on and across systems.

## Creating custom assets

For complete flexibility, you can create custom assets that are tailored to your organization's needs. Custom assets can be created from scratch or based off of an existing asset by duplicating it. For more on duplicating assets, see Duplicating assets.

Some assets must be provided in JSON format, either by uploading a JSON file or copying and pasting JSON text into the FortiDLP Console. However, to simplify creation of list assets, such as IP address lists, these values can alternatively be entered as plain text.

**AI-Enhanced Data Protection and Insider Risk Management**

FortiDLP is a next-generation cloud-native endpoint data protection solution that helps your security team anticipate and prevent data leaks, detect behavior-related insider risks, and train employees on proper cyber hygiene.

Unlike competitive solutions, FortiDLP combines data loss prevention, insider risk management, SaaS data security, and risk-informed user education for a unified approach to data protection.

69.     FortiDLP performs the step of training one or more deep learning algorithms using said one or more training datasets (e.g., FortiAI ML training pipelines).

---

[22] https://docs.fortinet.com/document/fortidlp/latest/fortidlp-administration-guide/067438/policies.

[23] https://docs.fortinet.com/document/fortidlp/latest/fortidlp-policies-reference-guide/244425/content-inspection-parameters.

[24] https://docs.fortinet.com/document/fortidlp/latest/fortidlp-administration-guide/045955/creating-custom-assets.

[25] https://www.fortinet.com/products/fortidlp.

**Enhanced with Artificial Intelligence**

From day one, FortiDLP applies machine learning—integrated into the FortiDLP agent—to baseline individual user activity and uses behavioral analytics algorithms to detect typical versus novel or anomalous behavior.

In addition, FortiDLP utilizes FortiAI (AI Assistant) to contextualize data and summarize activities associated with high-risk activity, accelerating incident analysis. Activities are mapped to MITRE ENGENUITY™ Insider Threat Tactics, Techniques, and Procedures (TTP) Knowledge Base. [26]

70.    FortiDLP performs the step of extracting and indexing one or more internal electronic communications of an enterprise (e.g., FortiMail email inspection / SIEM ingestion).

**Detect and Stop High Risk Intentional Behavior**

FortiDLP applies advanced Sequence Detection to identify and alert on high-risk intentional behavior as it is happening. Sequence Detection correlates actions across Collection, Defense Evasion and Exfiltration actions to detect and alert on insider behaviors that matter most, enabling analysts to intervene rapidly before serious damage can be done. [27]

71.    FortiDLP performs the step of applying said one or more deep learning algorithms to said one or more internal electronic communications to identify any one of said one or more threats or risks of interest (AI-driven phishing, BEC, malware analysis).



72.    FortiDLP performs the step of reporting said identified one of said one or more threats or risks of interest (e.g., FortiMail alerts/logs/reports, FortiAnalyzer event handling/reporting, and/or FortiSOAR alert/incident creation) to an existing case management system for action by the enterprise (e.g., FortiSOAR incident/case management).

---

[26] https://www.fortinet.com/content/dam/fortinet/assets/data-sheets/fortidlp.pdf.
[27] https://www.fortinet.com/content/dam/fortinet/assets/data-sheets/fortidlp.pdf.

> ## Webhooks
>
> Webhooks allow you to integrate FortiDLP with third-party systems, which subscribe to action, audit log, detection, and incident events. When these events occur, FortiDLP sends a **POST** payload to the webhook's configured URL.
>
> To optimize your workflow, FortiDLP lets you choose how often payloads are sent and filter events by properties, such as tags, risk scores, and labels. [28]

73.    Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Fortinet has used the Accused Products in a manner that directly infringes at least the method claims of the '548 Patent.

74.    Defendant has and continues to indirectly infringe one or more claims of the '548 Patent by knowingly and intentionally inducing others, including Fortinet customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

75.    Defendant, with knowledge that these products, or the use thereof, infringe the '548 Patent at least as of the date of this Complaint, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '548 Patent by providing these products to others for use in an infringing manner.  Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, including specifically those related to Defendant's specific industry, thereby remaining willfully blind to the Patents-in-Suit at least as early as the issuance of the Patents-in-Suit.

76.    Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '548 Patent, but while remaining willfully

---

[28] https://docs.fortinet.com/document/fortidlp/1.0.0/fortidlp-administration-guide/30474/webhooks.

blind to the infringement. Defendant has and continues to induce infringement by its customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications, including the documents cited herein.

77.    Defendant has indirectly infringed and continue to indirectly infringe one or more claims of the '548 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '548 Patent is directly infringed by others.  The accused components within the Accused Products are material to the invention of the '548 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be specially made or adapted for use in the infringement of the '548 Patent. Defendant performs these affirmative acts with knowledge of the '548 Patent and with intent, or willful blindness, that they cause the direct infringement of the '548 Patent.

78.    Arc Link has suffered damages as a result of Defendant's direct and indirect infringement of the '548 Patent in an amount to be proven at trial.

79.    Arc Link has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '548 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

**COUNT V**
**(Infringement of the '622 Patent)**

31

80.     Paragraphs 1 through 18 are incorporated by reference as if fully set forth herein.

81.     Arc Link has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '622 Patent.

82.     Defendant has and continues to directly infringe the '622 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '622 Patent. Such products include, but are not limited to, hardware and/or software products that coordinate host or endpoint security information with a network firewall or SDN-style enforcement point to automatically deploy firewall rules or blocking actions, such as FortiGate (e.g., FG/FWF-30G series, FG/FWF-50G series, FG/FWF-70G/71G series, FG/FWF-90G/91G series, FG-120G/121G, FG-200G/201G, FG-3000G/3001G, FG-400G/401G, FG-700G/701G, FG-900G/901G, FG-3500G/3501G), FortiSwitch (e.g., FS-624F, FS-624F-FPOE, FS-648F, FS-648F-FPOE, FS-2048F, FS-1048G, FS-3032G), and FortiManager (e.g., FMG-200G, FMG-410G, FMG-1000G, FMG-3100G, FMG-3750G), as well as FortiManager Cloud, FortiManager-VM, and FortiOS for software and cloud-managed deployments, among other Fortinet products.

83.     For example, Defendant has and continues to directly infringe at least claim 1 of the '622 Patent by making, using, offering to sell, selling, and/or importing into the United States hardware and/or software products that provide a firewall on a software-defined network, such as the FortiGate 901G. The FortiGate 901G is exemplary of how the other Fortinet products accused herein infringe the '622 Patent.

84.     For example, the FortiGate 901G is an apparatus for deploying a firewall on a software-defined network (SDN), the apparatus comprising: a public key distributor configured to

32

transmit a public key (e.g., FortiGate PKI, Fortigate CA).



85.    For example, the Fortigate 901G comprises a resource monitor configured to monitor resources of a network (e.g., FortiManager, Security Fabric, FortiAnalyzer).



[29] https://docs.fortinet.com/document/fortigate/8.0.0/administration-guide/611729/ca-certificate.
[30] https://www.fortinet.com/products/management/fortimanager.

## Adding FortiGate to FortiManager

FortiGate must be managed by FortiManager to work with Policy Analyzer MEA. You must also import policy packages from FortiOS to FortiManager. You can import policy packages as part of using the *Add Device* wizard. Alternately you can import policy packages after you complete the wizard.

Policy Analyzer MEA automatically adds a policy block to the Security Policy in the policy package, so you must import the policy package to enable updates to it by FortiManager and Policy Analyzer MEA.

FortiManager must be synchronized with FortiGate to work with Policy Analyzer MEA. [31]

---

[31] https://docs.fortinet.com/document/fortimanager/7.6.0/policy-analyzer-1-0-0-beta-administration-guide/893031/adding-fortigate-to-fortimanager.

[32] https://docs.fortinet.com/security-fabric.

34





86.     For example, the Fortigate 901G comprises a host monitor configured to receive a firewall rule of at least one host (e.g., FortiClient EMS, FortiNAC, FortiLink, FortiSwitch), which is encrypted by the public key.

---

[33] https://www.fortinet.com/products/management/fortianalyzer
[34] https://docs.fortinet.com/document/fortigate/8.0.0/administration-guide/712303/configuring-fortianalyzer.



## FortiClient EMS - Endpoint Management Server

FortiClient Endpoint Management Server (FortiClient EMS) is a security management solution that enables scalable and centralized management of multiple endpoints (computers). FortiClient EMS provides efficient and effective administration of endpoints running FortiClient. It provides visibility across the network to securely share information and assign security profiles to endpoints. It is designed to maximize operational efficiency and includes automated capabilities for device management and troubleshooting.

FortiClient EMS is designed to meet the needs of small to large enterprises that deploy FortiClient on endpoints. Benefits of deploying FortiClient EMS include:

- Remotely deploying FortiClient software to Windows PCs.

- Updating profiles for endpoint users regardless of access location, such as administering antivirus, web filtering, VPN, and signature updates.

- Administering FortiClient endpoint registrations, such as accepting, deregistering, and blocking registrations.

- Managing endpoints, such as status, system, and signature information.

- Identifying outdated versions of FortiClient software. [35]

---

[35] https://docs.fortinet.com/document/fortigate/6.4.0/ports-and-protocols/35450/forticlient-ems-endpoint-management-server.



DOCUMENT LIBRARY   5.4.0

## Integrating a FortiGate with FortiClient EMS

In this recipe, you will learn how to integrate a FortiGate with FortiClient Enterprise Management Server (EMS) and your Active Directory server to protect the devices or endpoints on your network. Using this Internal Segmentation Firewall (ISFW) configuration you can relatively easily deploy and manage FortiClient to protect all of the endpoints on your network.

FortiClient EMS supports ISFW by simplifying FortiClient deployment and by providing endpoint management from a single console. FortiClient EMS helps to provide real-time control and visibility into your endpoints when they are both on and off corporate networks.

In FortiGate Integrated mode, FortiClient EMS deploys the endpoint clients while an integrated FortiGate running FortiOS 5.4 handles Network Access Control (NAC) and policy enforcement.

For more information on FortiClient EMS, please refer to the FortiClient EMS Administration Guide.

---

[36] https://docs.fortinet.com/document/fortigate/5.4.0/cookbook/75963/integrating-a-fortigate-with-forticlient-ems.

37

Control

## Policy Engine

The Policy Engine enables the creation of security policies tailored to individual users and endpoint devices based upon a rich set of information residing in the central database of the FortiNAC Platform. The Policy Engine also functions as a centralized policy decision point responsible for making real-time policy decisions.

## Enforcement Engine

Once a policy decision has been made, an automated response action is typically executed at one or more points of enforcement in the network. The Enforcement Engine leverages information from the Device, State, and Policy Engine to initiate policy enforcement actions.

For example, access policy might be enforced by dynamically changing the VLAN of a switch port or by setting Access Control Lists (ACLs) on a router or adjusting a Group Policy on a firewall, to isolate an endpoint device that is determined to be in an "at risk" state.

## Act – Detect & Response

One of the greatest challenges facing today's IT organization is that of trying to keep up with evolving network security challenges with very limited staff resources. FortiNAC enables automation of various configuration and management tasks performed by IT staff today, such as provisioning network access for different users and devices. This not only frees IT staff to be able to focus on more important things, but also enhances security and efficiency with the ability to dynamically adapt to network threats and changes.

## Known or Unknown

When any device connects to the network FortiNAC checks to see if it is known or Unknown. Known devices are allowed to access the appropriate network. Unknown devices are placed in an isolation Network.

## Security Systems

When the FortiGate appliance detects a threat, it will send the threat and endpoint information to FortiNAC. The FortiNAC policy engine will process the information and take the appropriate action based on policy. For example, if the endpoint is owned by an executive of the company, an email can be sent to IT and the executive. [37]

---

[37] https://docs.fortinet.com/document/fortinac-f/7.6.0/concept-guide/49302.

---

### Configuring FortiNAC

A FortiNAC device can be added to the Security Fabric on the root FortiGate. After the device has been added and authorized, you can log in to the FortiNAC from the FortiGate topology views.

FortiNAC requires REST API access to FortiGate.

[38]

---

### FortiLink

FortiGate units can be used to remotely manage FortiSwitch units, which is also known as using a FortiSwitch in FortiLink mode. FortiLink defines the management interface and the remote management protocol between the FortiGate and FortiSwitch.

[39]

---

# Overview

Fortinet offers scalable Ethernet switching that combines network access and security with ease of use. With Fortinet secure office networking, security and management are converged and delivered directly from the FortiGate NGFW to any device attached to the FortiSwitch. Visibility and control of all attached devices through basic NAC features means even the smallest office can easily implement zero-trust networking at no extra charge.

[40]

---

87.    For example, the FortiGate 901G comprises a decryption unit configured to decrypt information received from the host monitor by using a secret key (e.g., FortiGate).

---

[38] https://docs.fortinet.com/document/fortigate/8.0.0/administration-guide/264311/configuring-fortinac.

[39] https://docs.fortinet.com/document/fortigate/6.4.0/ports-and-protocols/899996/fortilink.

[40] https://www.fortinet.com/products/smallbusiness/secure-switching.



Home  >  FortiGate / FortiOS 8.0.0  >  Best Practices

8.0.0 ↓

## SSL/TLS deep inspection

TLS encryption is used to secure traffic, but the encrypted traffic can be used to get around your network's normal defenses. SSL/TLS deep inspection allows firewalls to inspect traffic even when they are encrypted. When you use deep inspection, the FortiGate serves as the intermediary to connect to the SSL server, then decrypts and inspects the content to find threats and block them. It then re-encrypts the content with a certificate that is signed by the FortiGate, and sends it to the real recipient. The FortiGate acts as a subordinate CA to sign the certificate on the fly, as it re-encrypts traffic. The FortiGate usually uses a subordinate CA certificate that is signed by the company's private CA, such as a FortiAuthenticator or a Windows server with certificate services. For information about uploading a CA certificate and private key for deep inspection, see Certificates in the FortiOS Administration Guide.

88.    The FortiGate 901G comprises a merge unit (e.g., FortiGate, FortiManager, Fortinet Security Fabric) configured to merge the decrypted information to provide a merged firewall rule. The FortiGate 901G comprises a firewall deployment unit (e.g., FortiGate) configured to deploy the merged firewall rule to a switch; wherein the public key is transmitted to the switch through a control plane, and the switch is directly connected to the host; the host, to which the public key is transmitted, is configured to transmit a firewall rule of the host to the host monitor through a data plane.

---

[41] https://docs.fortinet.com/document/fortigate/8.0.0/best-practices/598577/ssl-tls-deep-inspection.

Home > FortiManager 6.2.1 > Administration Guide

6.2.1 ↓

# Firewall Policy & Objects

The *Policy & Objects* pane enables you to centrally manage and configure the devices that are managed by the FortiManager unit. This includes the basic network settings to connect the device to the corporate network, antivirus definitions, intrusion protection signatures, access rules, and managing and updating firmware for the devices.

All changes related to policies and objects should be made on the FortiManager device, and not on the managed devices.

[42]

89.     Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Fortinet has used the Accused Products in a manner that directly infringes at least the method claims of the '622 Patent.

90.     Defendant has and continues to indirectly infringe one or more claims of the '622 Patent by knowingly and intentionally inducing others, including Fortinet customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

91.     Defendant, with knowledge that these products, or the use thereof, infringe the '622 Patent at least as of the date of this Complaint, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '622 Patent by providing these products to others for use in an infringing manner. Alternatively, on information

---

[42] https://docs.fortinet.com/document/fortimanager/6.2.1/administration-guide/304425/firewall-policy-objects.

and belief, Defendant has adopted a policy of not reviewing the patents of others, including specifically those related to Defendant's specific industry, thereby remaining willfully blind to the Patents-in-Suit at least as early as the issuance of the Patents-in-Suit.

92.    Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '622 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications, including the documents cited herein.

93.    Defendant has indirectly infringed and continue to indirectly infringe one or more claims of the '622 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '622 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '622 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be specially made or adapted for use in the infringement of the '622 Patent. Defendant performs these affirmative acts with knowledge of the '622 Patent and with intent, or willful blindness, that they cause the direct infringement of the '622 Patent.

94.     Arc Link has suffered damages as a result of Defendant's direct and indirect infringement of the '622 Patent in an amount to be proven at trial.

95.     Arc Link has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '622 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury for all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Arc Link prays for relief against Defendant as follows:

a.     Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of the Patents-in-Suit;

b.     An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

c.     An order awarding damages sufficient to compensate Arc Link for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d.     Entry of judgment declaring that this case is exceptional and awarding Arc Link its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e.     Such other and further relief as the Court deems just and proper.

Dated: June 8, 2026                                Respectfully submitted,

                                        _/s/ John Andrew Rubino_____
                                        John Andrew Rubino
                                        NY Bar No. 5020797
                                        Email: jarubino@rubinoip.com

Michael Mondelli III
NY Bar No. 5805114
Email: mmondelli@rubinoip.com
**RUBINO IP**
1200 Harbor Blvd., 10th Floor
Weehawken Township, NJ 07086
Telephone: (201) 341-9445
Facsimile: (973) 535-0921

*ATTORNEYS FOR PLAINTIFF,
ARC LINK LLC*